**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| LILIANA ELIZABETH YANEZ,<br>*on behalf of herself,* | Case No.: |
| Plaintiff,<br><br>v.<br><br>MOCHICA GROUP CORP., JOHN DOE CORPORATIONS 1-10, INES YALLICO, and AUGUSTO YALLICO,<br><br>Defendants. | **COMPLAINT**<br><br>**Jury Trial Demanded** |

---

Plaintiff, LILIANA ELIZABETH YANEZ, ("Plaintiff" "Plaintiff Yanez"), by and through her undersigned attorneys, hereby files this Complaint against Defendants MOCHICA GROUP, JOHN DOE CORPORATIONS 1-10, CORP. (together, the "Corporate Defendants"), INES YALLICO and AUGUSTO YALLICO (together, the "Individual Defendants," and collectively with the Corporate Defendants, the "Defendants") and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that she is entitled to recover from Defendants: (1) unpaid wages for all hours worked due to time shaving, (2) liquidated damages and (3) attorneys' fees and costs.

1

2. Plaintiff alleges, pursuant to the New York Labor Law ("NYLL"), that she is entitled to recover from Defendants: (1) unpaid wages for all hours worked due to time shaving, (2) liquidated damages, (3) statutory penalties, and (4) attorneys' fees and costs.

3. Plaintiff alleges that, pursuant to New York State Human Rights Law N.Y. Exec. Law § 296 ("NYSHRL"), Plaintiff is entitled to recover from Defendants for discrimination on the basis of sex: (1) compensatory damages, (2) punitive damages and (3) attorneys' fees and costs.

4. Plaintiff alleges that, pursuant to New York City Human Rights Law, Administrative Code of City of NY § 8-107 ("NYCHRL"), Plaintiff is entitled to recover from Defendants for discrimination on the basis of sex: (1) compensatory damages, (2) punitive damages and (3) attorneys' fees and costs.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 because the unlawful acts for which Plaintiff seeks relief took place in that District.

**PARTIES**

7. Plaintiff LILIANA ELIZABETH YANEZ is a resident of Queens County, New York

8. Corporate Defendant MOCHICA GROUP CORP. is a domestic business corporation organized under the laws of the State of New York, with an address for service of process located at c/o Spiegel & Utrera, P.A., P.C., 45 John Street, Suite 711, New York, NY

10038. MOCHICA GROUP CORP. owns and operates a chain of Peruvian Restaurants under the Pio Pio name.

9. JOHN DOE CORPORATIONS 1-10 consist of the restaurants owned and operated by Defendants:

   a. 62-30 Woodhaven Boulevard, Rego Park, NY 11379 (the "Rego Park Location");
   b. 84-02 Northern Boulevard, Jackson Heights, NY 11372 (the "Jackson Heights Location");
   c. 84-21 Northern Boulevard, Jackson Heights, NY 11372 (the "Jackson Heights To-Go Location");
   d. 264 Cypress Ave., Bronx, NY 10454 (the "Bronx Location");
   e. 604 Tenth Ave., New York, NY 10036 (the "Hell's Kitchen Location");
   f. 210 E. 34th St., New York, NY 10016 (the "Murray Hill Location");
   g. 702 Amsterdam Ave., New York, NY 10025 (the "Upper West Side Location");
   h. 1746 First Ave., New York, NY 10128 (the "Upper East Side Location");
   i. 282 Kings Hwy, Brooklyn, NY 11223 (the "Brooklyn Location");

(collectively, "Pio Pio Restaurants"), and

   j. 84-13 Northern Blvd, Jackson Heights, NY 11372 (the "Amaru Bar").

10. Individual Defendant AUGUSTO YALLICO is the Chairman or Chief Executive Officer of all Corporate Defendants. AUGUSTO YALLICO hired the Plaintiffs directly and operates and supervises the Pio Pio Restaurants.

11. Individual Defendant INES YALLICO is a principal and controlling member of all Corporate Defendants. At all relevant times, she has been the General Manager of the Pio Pio Restaurants.

12. Each of the Individual Defendants had the power and exercised the authority to (i) fire and hire all employees of Pio Pio Restaurants, (ii) determine their rate and method of pay, (iii) determine their work schedules, (iv) maintain employees' employment records and (v) otherwise affect the quality of employment of Plaintiff. The Individual Defendants exercised functional control over the business and financial operations of the Corporate Defendants, including ensuring that employees properly prepared food and served customers to ensure that the Pio Pio restaurants were operating efficiently and profitably. At all times, employees could complain to either of the Individual Defendants directly regarding any of the terms of their employment, and the Individual Defendants would have the authority to effect any changes to the quality and terms the employment.

13. The Pio Pio Restaurants are operated from a single central office located at 8421 Northern Blvd., Jackson Heights, NY 11372. The central office is the operational headquarters of Corporate Defendant MOCHICA GROUP CORP. All employee and payroll records were managed and retained at the central office. Additionally, bookkeeping, human resources, and marketing personnel worked from the central office to manage all Pio Pio restaurants.

14. Individual Defendants, INES YALLICO and AUGUSTO YALLICO are officers in charge of daily operations of each of the Pio Pio restaurants. At all times, INES YALLICO and AUGUSTO YALLICO control each of the managers at each of the Pio Pio restaurants. At all times, INES YALLICO and AUGUSTO YALLICO have a direct or indirect controlling interest in each of the Pio Pio restaurants.

15. The Defendants operate all nine Pio Pio restaurants the bar Amaru as a single integrated enterprise. Specifically, the restaurants and bar are engaged in related activities, share common ownership and have a common business purpose:

   a. Related Activities

      i. The Pio Pio Restaurants and bar Amaru interchange supplies and employees are shifted among the restaurants and bar. Employees are also allowed to cover shifts at different locations. For example, Plaintiff LILIANA ELIZABETH YANEZ was transferred to multiple locations throughout her employment.

      ii. The Pio Pio Restaurants and the bar Amaru are operated from a single central office located at 8421 Northern Blvd., Jackson Heights, NY 11372. The central office is the operational headquarters of Corporate Defendant MOCHICA GROUP CORP. All employee and payroll records were managed and retained at the central office. Additionally, bookkeeping, human resources, and marketing personnel worked from the central office to manage all Pio Pio restaurants and the bar Amaru.

      iii. The Pio Pio restaurants are all advertised jointly as a common enterprise on Defendants' website, htttp://www.piopio.com.

   b. Common Ownership

      i. Individual Defendants, INES YALLICO and AUGUSTO YALLICO are officers in charge of daily operations of each of the Pio Pio restaurants and the bar Amaru. They set all wage and hour policies, which are effected by managers at each Pio Pio restaurant.

    ii. At all times, INES YALLICO and AUGUSTO YALLICO control each of the managers at each of the Pio Pio restaurants and the bar Amaru.

    iii. At all times, INES YALLICO and AUGUSTO YALLICO have a direct or indirect controlling interest in each of the Pio Pio restaurants and the bar Amaru.

  c. Common Business Purpose

    i. The Pio Pio restaurants and the bar Amaru all share similar menu items and specialize in serving Peruvian cuisine and drinks.

Although the Plaintiff did not work at all the Pio Pio restaurants, all of the restaurants are named in this Complaint. Because all of the restaurants share identical illegal policies, the restaurants (and the relevant Corporate Defendants) are properly named because of outstanding liability to Plaintiff.

 16. At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

## STATEMENT OF FACTS

 17. Until November 2017, Plaintiff Yanez worked as a cashier at the Pio Pio restaurant located at 604 Tenth Ave., New York, NY 10036 (the "Hell's Kitchen Location").

 18. In or around November 2017, Plaintiff Yanez was transferred to the Pio Pio restaurant at 62-30 Woodhaven Boulevard, Rego Park, NY 11379 (the "Rego Park Location").

 19. In or around November 2018, Plaintiff was transferred to the Pio Pio restaurant located at 1746 First Ave., New York, NY 10128 (the "Upper East Side Location").

 20. In or around July 2019, Plaintiff was transferred to the Pio Pio restaurant located at 84-21 Northern Boulevard, Jackson Heights, NY 11372 (the "Jackson Heights Location").

21.     In or around September 2019, Plaintiff was transferred to the Pio Pio restaurant located at 210 E. 34th St., New York, NY 10016 (the "Murray Hill Location").

22.     From the start of her employment until January 2014, Plaintiff was scheduled to work six (6) shifts a week, Tuesdays to Sundays from 10:30 a.m. to 11:00 p.m., for a total of approximately seventy-five (75) hours per week.

23.     From January 2014 to the end of her employment with Defendants, Plaintiff was scheduled to work four (4) shifts per week, Mondays and Tuesdays from 10:30 a.m. to 11:00 p.m., Wednesdays from 10:30 a.m. to 12:00 a.m. and Thursdays from 10:30 a.m. to 5:00 p.m., for a total of approximately forty-five (45) hours per week.

24.     From the start of her employment until December 31, 2012, Plaintiff was paid at a rate of ten ($10.00) dollars per hour. From January 1, 2013 to December 31, 2014, Plaintiff was paid at a rate of twelve ($12.00) dollars per hour. From January 1, 2015, to December 31, 2016, Plaintiff was paid at a rate of fourteen ($14.00) dollars per hour. From January 1, 2017, Plaintiff was paid at a rate of sixteen ($16.00) dollars per hour.

25.     Throughout Plaintiff's entire period of employment, Defendants usually forced her to continue working for an average of thirty (30) minutes after she had already clocked out at the end of her shift.  By doing so, Defendants categorically reduced her compensable hours every week, and she was not given compensation for all hours worked.

26.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff for all regular or overtime hours worked due to Defendants' routine time shaving of her hours, in violation of the FLSA and the NYLL.

27.     In addition, Plaintiff was regularly subjected to sexual harassment, encouraged and directed by the Restaurants' management at owners, at four of the five Pio Pio locations where she worked. The chronology of events is detailed below.

*The Rego Park Location*

28.     Plaintiff's ordeal at Pio Pio restaurants began in November 2017, at the Hell's Kitchen Location, when Plaintiff had an altercation with Pio Pio's general manager Edward Burton.  After this, she was transferred to Pio Pio's Rego Park Location.

29.     Already in April 2018, Plaintiff noticed that her Rego Park manager Francisco, the kitchen staff, and a waiter, were throwing her uncomfortable glances, looking at her up and down from head to toe in a sexualized way as through inspecting her body.

30.     In June 2018, Francisco accused Plaintiff of stealing while continuing to give her the same sexualized looks on a consistent basis for no apparent reason.

31.     In July 2018, Francisco told her that the restaurant's owner, Augusto Yallico, had instructed him to "keep an eye" on her, betraying that the sexual gazes she was receiving were at his direction. Also in July 2018, Francisco initiated the practice of standing so close behind Plaintiff as she was opening the register that she would inevitably bump her butt into him in the process.  Rather than moving or apologizing, he remained in place, felt up her body, and once again stared her down.

32.     It soon enough become clear to Plaintiff that the accusations of theft were just a smokescreen behind which Francisco and others could prosecute Mr. Yallico's campaign of the sexual harassment against her.  She would have been swiftly fired from her position as a cashier if there was an actual reason to think she was stealing from the store. At the very least, she would have been transferred to another role away from the money, but she was not.

33. Plaintiff's understanding of the situation was repeatedly confirmed by Francisco's conduct. In August 2018, he began looking for other excuses to physically touch Plaintiff and would "accidentally" bump into her as they walked past each other. He then proceeded to put his hands on Plaintiff's waist and fondled her as he patted her down, with everyone in the store staring on, as though to verify that she hadn't stolen anything. This caused Plaintiff great distress, as it underscored that Francisco would use the flimsiest of excuses to lay his hands on her.

34. Other employees would soon learn from Francisco's example. Also in August 2018, an employee named Raphael knelt down behind Plaintiff on the pretext that he was picking up sodas when his real objective was to position himself so that Plaintiff would bump her buttocks against his head when she stepped back to open the cash register. Like the other employees, Raphael did not apologize for the "accident" and instead relished the contact. A waiter named Franz would watch her closely and stand right behind her in an imposing manner, leaving so little room that she would have to ask for permission to pass by him. That same month, Francisco instructed the cook to take a long time before serving Plaintiff her meal. He would also instruct other employees to watch Plaintiff whenever he was absent from the premises, and they continued the stratagem of walking, standing, or crouching so close to Plaintiff as to compel unwanted physical contact—for example, by pretending that they were looking for something under the counter near where Plaintiff was standing. Employees began following her to the bathroom and would stand in attendance outside it until she was done in order to draw attention to the fact of her bodily functions.

35. This again confirmed that the concerns about theft were a smokescreen, since there was nothing of value to steal from the bathroom. The only purpose of this stunt was sexual intimidation.

36. This bullying persisted into October 2008 when Plaintiff found menus and plastic bags scattered about in a disorderly fashion around her work area. This was not how she had left things. At one point, Plaintiff distinctly heard Francisco telling employees Alejandro and Christian to get their hands on her, which they then did under the pretext of placing food on the counter, setting the food down so close to her that physical contact was inevitable. Employees would also take photos of her as she bent down to put tips in her wallet, as though to capture her in a sexually compromising position.

37. On October 24, 2018, Plaintiff went to the bathroom before returning to her work station at the counter. Not realizing that she had returned, Francisco told employee Alejandro to "go see if the animal is finished," which Plaintiff overheard. Francisco told Alejandro to follow Plaintiff whenever she went to the bathroom.

38. On October 31, 2018, Pio Pio's owner Augusto visited the store and Plaintiff took the opportunity to confront him about her treatment at the store. She explained that other employees were always taking photos of her, following her to the bathroom, and referring to her with derogatory nicknames in an unending stream of harassment. Plaintiff also related Francisco's statement to her that all this was being done on Augusto's orders. Rather than denying this or expressing surprise, Augusto remained silent before telling Plaintiff he had nothing to say, thus confirming that her sexual harassment was on his orders. He then ordered her to sweep the floor and left.

39. The harassment persisted into November 2018. On November 6, 2018, Plaintiff angrily confronted Raphael about his practice of bending down to pick up sodas as she was counting money in a manner calculated to ensure that her buttocks collide with his head. Raphael

did not acknowledge that he was doing anything wrong. Also that day, she overhead Francisco calling her "huevona de mierda" ("piece of shit" in Spanish).

*The Upper East Side Location*

40.  Plaintiff was transferred to the Upper East Side Location in or around November 2018. Things looked auspicious at first. November, December, and January seemed normal. And the location's manager, Ruben Escobar, even took her aside to reassure her that she would not face the same treatment she had encountered in previous locations. Word of her harassment and persecution had evidently gotten around.

41.  This reprieve was not to last, however, as the same pattern of sexual harassment resurfaced beginning in February 2019, when a waiter Jorge named Ticona began staring at her up and down on a daily basis while standing right in front of her, with his eyes fixating right on her pelvic area. He would also stare right at her breasts while whispering to co-workers. These behaviors were at the direction of the restaurant's owner, Augusto Yallico, since they would ramp up during Jorge's calls with Mr. Yallico, when it was clear to everyone that Plaintiff was the subject of the conversation.

42.  Also beginning in February 2019, Edwin Burton and a waitress named Paola would stare continuously at Plaintiff, as though to ensure she was not stealing anything. They would also roam around her station and search her area. Starting in March 2019, Paolo would stand outside of the restaurant every day as Plaintiff's shift was ending, waiting for her to come out, again as though to ensure she had not stolen anything. Paola would also whisper to other co-workers while throwing Plaintiff dirty looks.

43.  On April 3, 2029, Jorge struck up a normal conversation with Plaintiff while staring directly at her lower body the entire time.

11

44. The harassment at the Upper East Side location persisted until July 2019, when Plaintiff was transferred to the Jackson Heights Location.

*Jackson Heights Location*

45. Plaintiff's troubles followed her to the new location. On August 5, 2019, other employees began searching her wallet when she was away in the bathroom. They would also take pictures of her. It was the very same patterns as in the previous locations. On August 8, 2019 she told employee Carlos Preciado that she would be back in a few minutes, to which he responded, "It's better if you don't come back."

46. On August 12, 2019 employee Gabriel Cardenas would not stop staring at her whenever she bent down. That day, the owner Augusto visited the location and joined his employees in throwing knowing stares at Plaintiff, particularly at her breasts and genital areas, all while smirking at the distress they were obviously causing. On August 14, 2019, Plaintiff told the kitchen manager Miguel that the printer had run out of paper and Miguel used the excuse of getting more printer paper to bend down to get as close to her body impossible, even though this was not physically necessary to reach the paper. On July 15, 2019, employee Miguel Yascarabay used the pretext of giving Plaintiff some information to come up near her and place his arm on her back precisely at the waistband of her bra, which he then gripped for a few seconds. He repeated this the next day, July 16, 2019.

47. On August 20, 2019, employee Cirilo took a lesson from Miguel and also used the pretext of getting printer paper to bend down and get as close to Plaintiff's body as possible, allowing him to rub up against her midsection.

48. On August 26, 2019, Defendant Augusto Yallico came to the location and joined his employees in staring Plaintiff down with long, sexualized looks.

49. Furthermore, during August 2019, other employees began asking Plaintiff in mocking or sinister voices, "How is your husband's immigration application coming along?" Plaintiff was initially perplexed, as she had no idea why her tormentors would take up this topic. The mystery dissolved only in December 2019, when she called her family's immigration attorney for an update about the status of her husband's immigration application. She was shocked to learn that the case had been closed. The attorney told her that he had closed it following her own instructions back in August. Plaintiff had issued no such instructions and she now detected that an important document from the Immigration and Naturalization Service concerning the status of her husband's application was missing from her purse. Since that document also included her attorney's contact information, she was able to deduce that employees of Defendants' had stolen the document and then impersonated her in order to close her husband's case with the attorney. Their cryptic question about her husband's immigration status were allusions to this deed. Plaintiff and her husband had to start the entire two-year immigration application process anew.

*The Murray Hill Location*

50. Plaintiff was transferred to the Murray Hill Location in September 2019, where she remained until she was terminated in March 2020.

51. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff in this litigation and has agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIM**

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

52. Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

53. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

54. At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

55. At all relevant times, Defendants had gross annual revenues in excess of $500,000.

56. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff the full amount of wages she was owed due to compulsory off-the-clock work, in violation of the FLSA.

57. Records, if any, concerning the number of hours worked by Plaintiff and the actual compensation paid to Plaintiff should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

58. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff for all hours worked, including overtime hours, when Defendants knew or should have known such was due.

59. Defendants failed to properly disclose or apprise Plaintiff of her rights under the FLSA.

60. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff is entitled to liquidated (i.e. double) damages pursuant to the FLSA.

61. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid minimum wage, unpaid overtime wages, plus an equal amount as liquidated damages.

62. Plaintiff is entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

63. Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

64. At all relevant times, Plaintiff was employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

65. Defendants knowingly and willfully failed to pay Plaintiff the full amount of regular and overtime wages she was due as a result of compulsory off-the-clock work, in violation of the New York Labor Law.

66. Defendants knowingly and willfully failed to provide Plaintiff with proper wage statements as required under the New York Labor Law.

67. Defendants knowingly and willfully failed to provide Plaintiff with proper wage and hour notices as required under the New York Labor Law.

68. Due to the Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants unpaid wages due to time shaving, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the New York Labor Law.

## COUNT III

### VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

69. Plaintiff realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

70. The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment on the basis of sex, as well as retaliation for complaining about this.

71. Plaintiff was an employee within the meaning of NYSHRL and Defendants are covered employers under the NYSHRL.

72. Defendants operated a business that discriminated against Plaintiff in violation of the NYSHRL by subjecting Plaintiff to a hostile work environment. Defendants willfully failed to prevent, and indeed actively promoted, derogatory language, inappropriate looks, and inappropriate touching directed at Plaintiff on the basis of her sex.

73. Defendants' conduct was intentional, malicious and in reckless disregard of Plaintiff's protected rights under the New York Executive Law § 296 *et seq*.

74. As a result of Defendants' unlawful discriminatory practices, Plaintiff sustained injury, including but not limited to emotional distress.

75. Due to Defendants' violations under the NYSHRL, Plaintiff is entitled to recover (1) compensatory damages, (2) punitive damages and (3) attorneys fees' and costs.

## COUNT IV

### VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

76. Plaintiff realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

77. The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment on the basis of sex, as well retaliation for complaining of this.

78. At all relevant times, Defendants had at least four (4) persons in their employ. Plaintiff is an employee and qualified person within the meaning of NYCHRL and Defendants are covered employers under the NYCHRL.

79. Defendants operated a business that discriminated against Plaintiff in violation of the NYCHRL by subjecting Plaintiff to a hostile work environment. Defendants willfully failed to prevent, and indeed actively promoted, derogatory language, inappropriate looks, and inappropriate touching directed at Plaintiff on the basis of her sex.

80. Under the NYCHRL, Administrative Code Title 8-107(13), an employer is liable for the discriminatory conduct by an employee, agent or independent contractor. The NYCHRL provides in relevant part:

> (a) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
> (b) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
> > (1) the employee or agent exercised managerial or supervisory responsibility; or
> > (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
> > (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

81. Francisco was a supervisor in a managerial capacity who had the ability to set employees schedules and terminate employees. Francisco discriminated against Plaintiff based on

her sex by constantly using derogatory language and inappropriately touching and looking at Plaintiff. Plaintiff complained to management to no avail as no actions were taken to address this hostile work environment.

82. Defendant AUGUSTO YALLICO has managerial and supervisory authority. He encouraged and sometimes directed harassment toward Plaintiff on the basis of her sex.

83. Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYCHRL.

84. As a result of Defendants' unlawful employment practice, Plaintiff sustained injury, including but not limited to emotional distress.

85. Due to Defendants' violations under the NYCHRL, Plaintiff is entitled to recover from Defendants: (1) compensatory damages, (2) punitive damages, and (3) attorneys' fees and costs.

86. At all relevant times, Defendants operated a business that discriminated against Plaintiff on the basis of her sex.

87. Defendants willfully violated the NYCHRL, Administrative Code Title 8-107(13), as amended.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

b. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

c. An award of unpaid regular and unpaid wages due under the FLSA and NYLL;

d. An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the FLSA;

e. An award of liquidated damages as a result of Defendants' willful failure to pay wages, pursuant to the NYLL;

f. A declaratory judgment that the practices complained of herein are unlawful under the NYSHRL and NYCHRL;

g. An award of compensatory damages and punitive damages due under the NYSHRL;

h. An award of compensatory damages and punitive damages due under the NYCHRL;

i. An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties; and

j. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, on behalf of herself, demands a trial by jury on all issues so triable as of right by jury.

Dated: New York, New York
February 16, 2021

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorney for Plaintiff*

By: */s/ C.K. Lee*
C.K. Lee, Esq.