

August 31, 2023

Honorable Jennifer H. Rearden
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
100 Pearl Street
New York, NY 10007

      Re:   Yanez v. Mochica Group Corp. et al., 21-cv-1360-JHR-GWG

Dear Judge Rearden:

      New York Legal Assistance Group represents Plaintiff, Liliana Yanez ("Plaintiff" or "Ms. Yanez") for settlement purposes. I respectfully submit this letter motion on behalf of all parties for approval of the parties' negotiated Settlement Agreement and Release ("Settlement Agreement" or "Agreement"), attached as Exhibit A. For the reasons set forth below, the parties respectfully request that the Settlement Agreement be approved pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and be found to be fair and reasonable in accordance with the factors set forth in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-336 (S.D.N.Y. 2012). The Stipulation of Dismissal with Prejudice, for the entire case is attached as Exhibit B. Thus, the entire action will be discontinued and there is no request for the Court to retain jurisdiction, except as may be necessary to enforce the parties' Settlement Agreement.

**Plaintiff's Allegations**

      This action was brought against Defendants Mochica Group Corp. ("Mochica"), Ines Yallico ("Ines"), and Augusto Yallico ("Augusto") (collectively "Defendants") by Plaintiff on February 16, 2021, for alleged time shaving in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 *et seq.* In addition, Ms. Yanez alleges violations

under New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL") and New York City Human Rights Law, Administrative Code of the City of NY § 8 -107 ("NYCHRL") to recover damages for discrimination based on sex, including creating a hostile work environment. Plaintiff was represented by counsel when the Complaint was filed. She has appeared *pro se* in this action since June 22, 2021, when her prior attorneys were relieved pursuant to the order of the Honorable Gregory H. Woods, U.S.D.J. (Doc. No. 17).

Ms. Yanez began working full-time for defendant Mochica in February 2009 as a cashier, the position she currently holds.[1] Ms. Yanez is a currently employed at Pio Pio located in Murray Hill, NY, one of Mochica Group's nine Pio Pio Peruvian restaurants located in New York City.

Ms. Yanez was hired at an hourly rate, which has increased from $10.00/hr to $16.00/hr, which is well-above New York City's minimum hour rate. During the relevant time starting in January 2014 until December 2014, Plaintiff was paid at a rate of $12.00/hr (minimum wage was $8.00/hr), from January 2015 to December 2016 plaintiff was paid at a rate of $14.00/hr (minimum wage was $8.75-$9.00) and from January 2017 to present Ms. Yanez was paid at a rate of $16.00/hr (minimum wage was 2017-$11.00, 2018-$13.00 and 2019-today $15.00). Yanez has been paid over-time and spread of hours where applicable. In addition to her hourly rate, Ms. Yanez also receives cash tips. Her hours ranged from full-time and were reduced during the COVID-19 Pandemic to part-time at 20/hr a week and

---

[1] Yanez has not come to work for any of her scheduled shifts since the parties reached an agreement in principle. As a result, the parties later reached an agreement whereby Yanez would not be scheduled for any more shists during the pendency of this process for the Court to approve the parties' Settlement Agreement.

stayed at 20 hours per week on two days, pursuant Ms. Yanez's request. Up until the settlement was reached Ms. Yanez worked 20/hr a week two days a week from 10:30 a.m. until 8:30 p.m. At her request, Defendant took her off the schedule although she has not officially resigned from the company. The parties agreed that she can resign upon the approval of the Settlement Agreement. She has another job working 40 hours per week at a regular schedule of Friday – Tuesday.

Ms. Yanez alleges that throughout her employment she was forced to work an average of 30 minutes after she clocked out for the day. At her deposition she testified that she is seeking unpaid wages for alleged time shaving from 2019 through 2021.

Plaintiff also alleges she was regularly subjected to sexual harassment, encouraged, and directed by Pio Pio's managers and owner at four of the five Pio Pio locations where she worked during the course of her employment, including the Rego Park, Upper East Side, Jackson Heights and now the Murray Hill location. Those claims are subject to a separate confidential settlement agreement.

**Defendants' Response**

Defendants deny all allegations asserted by Plaintiff regarding alleged wage and hour violations, discrimination based on sex, including creating a hostile work environment. Ines is not an owner or supervisor and there is no basis for er inclusion in this action as a party. Defendants specifically deny any potential liability to Yanez.

Defendants dispute Ms. Yanez's claims regarding the hours she worked and Plaintiff's calculation of purported damages she alleges from 2019 through March 2021.

Defendants also vigorously deny the non-FLSA claims.  Plaintiff had been regularly scheduled to work Wednesday and Thursday only.

Throughout the course of discovery, Defendants submitted payroll records and clock-in/clock-out reports which confirm Defendants' position that Yanez was compensated for all hours worked.  The documentary evidence confirmed that Yanez was paid at or above the New York minimum wage rate of pay for all hours worked, the correct overtime and New York spread of hours rate(s) where applicable, and that she received tips.  Plaintiff did not produce any evidence to support a claim for time shaving and failed to produce any credible evidence to support the wage and hours claims.   Moreover, during the course of discovery, Plaintiff's theory of liability on the wage claims morphed to an unsubstantiated claim that she was not given a job as a waitress, and thus she made less money because her position remained a hostess.   There was no evidence to show she asked for a job as a waitress.

Defendants deny that Plaintiff ever "lost" 22 hours per week in shaved time including from 2019 through March 2021 and deny that there was any time shaving.  During discovery Plaintiff did not produce any record of such lost wages. From 2020, Ms. Yanez works two days per week. It is impossible to shave 22 hours off her hours in only two days. In addition, Ms. Yanez has worked 40 hours per week at another job for several years, further belying her claim of 22 hours per week of shaved times. In sum, there is a bona fide dispute between the Parties regarding the merits of Plaintiff's wage and hour claims. The instant settlement constitutes the Parties' effort to resolve the same in an amicable fashion through arm's length bargaining.

Defendant Ines does not hire or fire employees who work for any of the Pio Pio restaurants. She does not control employee work schedules, does not determine the rate and method of pay and does not maintain employment records for any of the employees. Ines does not have administrative responsibilities over Pio Pio employees, does not have the power to act on behalf of any Pio Pio employer vis a vis the employees, and does not have control over the day-to-day functions of any of the restaurants. She is not an officer of any entity which operates any Pio Pio restaurant.

## I.  Settlement Amount

The Parties engaged in good faith settlement discussions in advance of Court-ordered settlement and engaged in fulsome discovery. In addition, based on the discovery, Defendants made a motion for summary judgment seeking the dismissal of the case. As a result of the parties arms-length negotiations, as well as consideration of the completion of discovery and further analysis of the law, the Parties reached a resolution in principle on all matters.

Critically, the Parties have numerous key disputes that impact liability and damages. As a threshold matter, and at the crux of the Parties' dispute, Defendants contend that Plaintiff was paid her fair wages and provided the business records to support its claims. In contrast, Plaintiff did not produce any records, and her calculations of 22 hours of shaved hours over a two-day work week, along with the acknowledgment of another 40-hour a week job, may cast doubt on her claim of shaved hours. These disputes -- regarding whether there are any hours unaccounted for on her time sheets – will turn primarily on the credibility of the parties and if summary judgment is denied, require weighing factual issues by the trier of fact. As such, the

resolution of these disputes is difficult to predict and would have a significant outcome on liability and Plaintiff's damages at trial, as these issues could result in Plaintiff receiving an award that is significantly less than expected or even result in her receiving nothing at all. Additionally, Defendants contend that Plaintiff is not entitled to liquidated damages, whereas Plaintiff asserts that liquidated damages should be awarded.

Plaintiff's claim of 22 hours per week of unaccounted hours since 2019 assuming no vacation or sick time taken totals $36,000.00.  Based on vacation time and significant absences, this number is likely to be considerably less. Plaintiff claims that she would be entitled to FLSA liquidated damages in an amount equal to her alleged shaved hours.  In contrast, Defendants contends that Plaintiff is not entitled to any damages and that Plaintiff will not be able to show any failure to pay wages, let alone a willful failure that might entitle her to receive liquidated damages under the FLSA or the NYLL.

The Parties agreed on the settlement amount of $5,000.00 (less normal withholding and deductions) to avoid potentially significant and unanticipated burdens and expenses in establishing their respective positions in the litigation. NYLAG does not seek attorney's fees, so the entire amount will be paid directly to Ms. Yanez.  This gross settlement amount reflects a reasonable compromise between the parties' dispute over Defendant's alleged failure to pay shaved wages.

In addition, the Parties also settled the NYSHRL and NYCHRL sex discrimination claims as part of a global settlement. The settlement amount is subject to confidentiality and accordingly is not disclosed herein.

## II.  <u>The Settlement Agreement is Fair and Reasonable</u>

Plaintiff seeks final approval of the Settlement Agreement reached in this case, pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015) (holding that, "the FLSA falls within the 'applicable federal statute' exception under Rule 41" and therefore, "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."). As set forth in further detail below, and in accordance with *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012), the Parties agree that this settlement is fair, reasonable, consistent with the underlying purposes of the FLSA, and is the product of equal bargaining.

As articulated in *Wolinksy*, when assessing the fairness of a settlement, a court should consider the totality of circumstances including but not limited to several factors such as: (1) the range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement "is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinksy*, 900 F. Supp. 2d at 335 (quoting *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214, 2010 U.S. Dist. LEXIS 75098 (S.D.N.Y. July 23, 2010)). Based on an analysis of these factors, the Parties are confident that the negotiation process was conducted at arm's length and should pass this Court's scrutiny.

A.  **The Range of Possible Recovery**

Based on the above damage calculations and relying on Plaintiff's allegations of the number of hours worked and shaved, an optimistic expectation of damages that Plaintiff could contend she is owed is $36,000 in shaved wages and liquidated damages in an equal amount for willful violations. These calculations, however, do not factor Defendants' defenses asserted in the litigation and the inherent risks and uncertainties of proceeding with a jury trial. For example, Defendants have maintained that Plaintiff was paid her full wages and that it is almost impossible to shave 22 hours from two days per week of a ten-hour shift. Defendant also asserts that while no damages are warranted in this case, as there has been no FLSA violation, liquidated damages, which are reserved for willful violations, are particularly inappropriate. Defendants further state that Plaintiff's calculation of liquidated damages, which is an amount equal to any alleged unpaid overtime, is improper. After extensive discovery and settlement discussions, the Parties were able to negotiate the Settlement Agreement to resolve the FLSA for $5,000.00.

B.  **The Seriousness of the Litigation Risks Faced by the Parties**

Considering the risks and the uncertainty of trial, Plaintiff's counsel believes that this settlement is a fair result and should be approved.   See e.g. *Meigel v. Flowers of the World, NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, at *2-3, 11 Civ. 465 (KBF) (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.") (internal citations omitted).  Ms. Yanez understands the risks associated with bringing this matter to trial considering the compelling defenses raised by Defendants and the possibility

of no recovery if Defendants prevail on their motion for summary judgment or at trial. Most importantly, Plaintiff understands the situation, is satisfied with the settlement amount, and voluntarily and willingly entered into the Settlement Agreement.

Settling at this stage allows the Parties to avoid additional substantial costs and delays. The Parties' settlements avoid further briefing by the Parties on Defendants' motion for summary judgment and the possibility of a time consuming and risky trial, which could result in a months or years long delay to obtaining a potential recovery for Plaintiff, even if she is successful, and avoids potentially facing future appeals. In this litigation, Plaintiff faces an unusually high degree of risk if she continues to prosecute her claims to trial. Indeed, while plaintiffs in many FLSA cases face the risk that they may establish liability but still obtain less money than they hoped for in damages, particularly where a jury determines that a plaintiff's typical hours worked are less than the plaintiff believe, Plaintiff here faces the serious risk of a total loss. Indeed, Plaintiff here faces a much higher risk than an ordinary FLSA lawsuit. Plaintiff contends that she is likely to prove that she worked shaved hours, although the number of hours worked is contested and difficult to prove. If Defendants succeed on their motion for summary judgment, Plaintiff will not be entitled to any damages. Even if the motion is denied, there is a serious risk of losing at trial, in whole or in part. Even if Plaintiff is successful on her FLSA wage claims, but Defendants could prove that they made a good faith effort to comply with the FLSA, Plaintiff would not be entitled to liquidated damages under the FLSA, reducing Plaintiff's available FLSA damages by half.  As such, by settling at this stage, Plaintiff ensures that she will receive a fair and reasonable recovery in this matter, especially considering the serious risks faced by Plaintiff.

Accordingly, although there is a possibility that Plaintiff could recover higher damages if the case proceeded to trial, there is also the significant possibility that she could receive lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Further, settling now allows Plaintiff to recover a substantial amount now for her non-FSLA claims which have been vigorously disputed by Defendants as well. Thus, assuming the parties' settlement agreement is approved, Plaintiff will be able to recover her total settlement funds more expeditiously, and with more certainty, than a trial judgment.

### C.  The Settlement Negotiations Occurred at Arm's Length

From the onset of this case the Parties engaged in communications and discussions to settle this matter.  Defendants represented that Plaintiff was paid for all hours worked and provided business records to show her paid wages and clock-in and clock-out reports. Through discovery, Defendants also investigated the underlying facts for several of Plaintiff's claims and provided factual responses to defend against Plaintiff's claims. Through arm's length negotiations the Parties were able to reach a resolution under the Court's mandatory mediation program. The parties engaged in arm's length negotiations on two separate occasions, once before extensive discovery and no settlement was reached and once when the parties requested a settlement conference and were able to reach a settlement in connection with but prior to the settlement conference.

### D.  The Proposed Settlement Does Not Conflict with the *Cheeks* Admonitions

The settlement agreement does not contain general releases, confidentiality, and non-disparagement provisions.

Other factors present do not weigh against approval of the settlement. This matter was not brought as a collective action. Thus, the settlement of this action is only for individual Plaintiff Liliana Yanez and will have no impact on any other employees or their rights. Plaintiff will no longer work for the Defendants so there is no likelihood that Plaintiff's circumstances will recur. Additionally, this case presents no novel questions of law that would benefit from trial.

**E.  Possibility of Fraud or Collusion**

Both parties were represented by independent counsel in an arms-length negotiation and there is no suggestion of fraud or collusion in reaching the settlement.

**III. The Settlement Agreement Does Not Provide For Attorney's Fees**

Plaintiff is represented by NYLAG on a pro bono basis and therefore no attorney's fees will be paid out the settlement amount.

**IV. Conclusion**

For the foregoing reasons, counsel for all Parties respectfully submit that the Settlement Agreement is fair and reasonable, and therefore jointly request that the Court approve or so order the Settlement Agreement. We thank the Court for its consideration of this request.

Respectfully submitted,

*Susanne Keane*

Susanne Toes Keane